Charles A. CASTLE,
Plaintiff–Appellant,

v.

SANGAMO WESTON, INC., a Corporation, Defendant–Appellee.

Chris PAPASTRAT, Shelby Bass, et al.,
Plaintiffs–Appellants,

v.

SANGAMO WESTON, INC., A Corporation, Defendant–Appellee.

Nos. 86–3543, 86–3579.

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 1988.

Carlton Fields Ward Emmanuel Smith & Cutler, PA, Mark E. Grantham, Tampa, Fla., and Icard, Merrill, Cullis, Timm & Furen, PA, James E. Aker, Sarasota, Fla., for plaintiff-appellant.

1. The appellants are Shelby D. Bass, Jr., Gerard E. Breyton, Charles A. Castle, Edward G. Fearn, James W. Gregory, Harry K. Moore, John S. Norton, Chris Papastrat, Richard N. Ridgewell, and Donald J. Woodworth.

2. *See Castle v. Sangamo Weston, Inc.,* 650 F.Supp. 252 (M.D.Fla.1986).

3. 29 U.S.C. Sec. 621, *et seq.* The ADEA provides:

Hill, Ward & Henderson, PA, Benjamin H. Hill, III, Tampa, Fla., Kelley Drye & Warren, Ned H. Bassen, New York City, Shackleford Farrior Stallings & Evans, PA, Thomas C. MacDonald, Jr., Tampa, Fla., for defendant-appellee.

Before FAY and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This appeal arises from the district court's determination of appellants'[1] consolidated suits against appellee Sangamo Weston, Inc.[2] for willful violation of the Age Discrimination Employment Act of 1967, 29 U.S.C. Sec. 621, *et. seq.* ("ADEA").[3] In a unique procedural maneuver the district court judge rendered judgment for appellants pursuant to the jury's verdicts while simultaneously granting appellee's motion for judgment notwithstanding the verdict. We find there was sufficient substantial evidence to support the jury's verdicts for all ten appellants. Therefore, the grant of the motion for judgment notwithstanding the verdict was inappropriate. We conclude the district court's conditional rulings on liquidated damages, reinstatement, front pay, and pension benefits were essentially advisory opinions and, thus, are invalid. We reverse and remand this case back to the district court to reinstate the jury verdicts and to determine appellants' claims for liquidated damages, reinstatement, front pay, and pension benefits.

## I. FACTUAL BACKGROUND

(a) It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age

.     .     .     .     .

In 1979 appellee Sangamo Weston,[4] headquartered in Atlanta, consisted of several operating divisions including the Data Systems Division, the focal point of this litigation. This division, primarily located in Sarasota, Florida, designed, manufactured, and marketed highly sophisticated telemetry equipment used for the transmission, reception, and recording of data.

In the fall of 1978, approximately six months prior to appellants' dismissals by the company, a key management change occurred at the company's Sarasota facility. Anthony J. ("Tony") Martin, who had previously worked in his native England for another subsidiary of Sangamo Weston's parent corporation, was named the new General Manager for Sangamo Weston's Sarasota facility. Martin's appointment coincided with an apparent plan for business reorganization by the company to reduce its recent losses. At his first meeting with personnel in Sarasota, Martin commented that his task would be to review the make-up of the staff and see what he could do to streamline the company. At this meeting and at various other times Martin showed a distinct bias against anyone over forty years of age despite the fact that he himself was in his early forties. Martin stated that he saw too many older employees whom he termed the "old guard" in the management and engineering staff, that he did not care to have managers reporting to him that were older than he was, and that the company needed "new, young blood." Martin often referred to various employees at the Sarasota plant as "old farts," "old bastards," "little old ladies," "old cows," and even declared during management meetings that "everyone over 35 should be sacked." Martin believed that the older employees lacked an aggressive approach to business, that they were part of the "cancer" and the "malaise" that existed at the Sarasota plant, that the older employees were "set in their ways," that "they were the reason that the business wasn't going forward," and that "they would have to be replaced with younger people" in order for the company's business to progress. Martin was warned by successive personnel directors in Sarasota that the United States had laws against age discrimination and that his comments were out of place and he needed to be more careful with his language. The personnel directors testified that Martin's response was "rather blase, saying it wasn't a concern of his, that that wasn't important."

Early in 1979 Martin launched the plan to reduce the number of the company's employees in the Engineering and Data Systems Departments. Martin delegated responsibility for selecting the employees for the reduction in force ("RIF") to the directors of those departments, Charles Gilmore and Kent Morgan. During a series of meetings, Gilmore and Morgan brought proposed lists for the selections to Martin. Martin would then ask why certain employees, including some of the appellants, were not on the proposed lists. At these meetings, Martin also made derogatory, age-related remarks about many of the employees being considered for termination. The lists were finalized in the spring of 1979.

Just prior to the RIF, appellant Charles A. Castle was fired by his immediate superior's boss, Jim Williams, who had been brought to Sarasota from England by his friend, Tony Martin, only the month before Castle's dismissal. Eight of the other appellants were dismissed during the actual RIF which occurred in June 1979. The tenth appellant, Harry K. Moore, was demoted from his position of Eastern Regional Sales Manager for "data recorders" to position of salesman by his immediate superior, Dan Gincig, in October 1979. Moore testified that he quit after he was demoted because he was too humiliated to work for the company any longer, he could not sell either himself or the company, and the demotion entailed a $5,000 decrease in pay, decrease in certain other company perks, and loss of management responsibilities.

---

**4.** In this opinion Sangamo Weston, Inc. will be referred to as "Sangamo Weston," "the company," "the employer," or "the appellee."

All ten of the appellants were exempt at the time of dismissal. Nine of them were in middle management or were senior engineers on the staff of the Data Systems Division in Sarasota. Appellant Moore, as Eastern Regional Sales Manager, was based at the company's branch office near Washington, D.C. At the time of their dismissal appellants ranged in age from forty-one to fifty-seven.

On May 11, 1981, appellant Castle filed an individual age discrimination complaint against Sangamo Weston. On June 5, 1981, the other nine appellants filed their joint complaint against the company. All ten appellants alleged that the company discharged them during 1979 because of their age. These actions were consolidated on July 24, 1981.

Following certain procedural disputes, see Castle v. Sangamo Weston, Inc., 744 F.2d 1464 (11th Cir.1984), which need not concern us here, a jury trial was commenced in the United States District Court for the Middle District of Florida. At the close of all the evidence Sangamo Weston moved for a directed verdict. The district court reserved decision on this motion and proceeded to submit special interrogatories to the jury. On March 5, 1986, the jury returned verdicts of willful age discrimination in favor of each of the appellants and found that back pay damages should be awarded to appellants in amounts ranging from $0 to $181,451. Castle v. Sangamo Weston, Inc., 650 F.Supp. 252, 255 (M.D. Fla.1986). The district court then excused the jury. On the following day a hearing was held concerning appellee's motion for directed verdict. At the beginning of this hearing appellee made an oral motion for judgment notwithstanding the verdict. Pursuant to the trial judge's request the parties gave arguments on all issues raised by Sangamo Weston's motion for directed verdict and also on all issues raised by Sangamo Weston's motion for judgment n.o.v. "This was done to accommodate the judge who presided over the trial and avoid a return trip from Omaha, Nebraska, to

Tampa, Florida, to hear argument on a motion for judgment notwithstanding the verdict." Castle v. Sangamo Weston, Inc., 650 F.Supp. at 254–55. The parties also filed extensive post-trial legal memoranda on these issues.

On July 17, 1986, by an order entitled "Judgments," the district court entered judgment for each of the ten appellants in amounts equal to the back pay damages awarded by the jury and an additional equal amount for liquidated damages to each appellant, and front pay to appellants Fearn, Gregory, and Ridgewell.[5] On the very same day, however, the trial judge entered a separate "Order and Judgment" and accompanying "Memorandum Opinion" which granted in full Sangamo Weston's motion for judgment n.o.v. as to each of the appellants and dismissed the action. See Castle v. Sangamo Weston, Inc., 650 F.Supp. at 277.

In a most peculiar approach, the trial judge in his "Memorandum Opinion" ruled that the liquidated damage and front pay awards included in the "Judgments" were made on condition that "the jury's verdict is allowed to stand [on appeal]." Id. at 255, 258. In further anticipation of the possibility of his order granting Sangamo Weston's motion for judgment n.o.v. might be reversed on appeal, the district judge made several other conditional rulings including denying reinstatement of appellants into their former jobs and into the company's pension plan, and rejecting the appellants' claim for an award of pension benefits in lieu of reinstatement into the pension plan. Id. at 255–261.

The procedural posture of this case then took a more complicated twist. On July 25, 1986, Sangamo Weston filed a second, written motion for judgment n.o.v. to "avoid any possible contention that Defendant did not timely move for post-trial relief." On August 12, 1986, the appellants, in "an abundance of caution," filed their first notice of appeal, No. 86–3543, specifically ap-

---

**5.** For exact amounts of back pay, liquidated damages, and front pay awarded, see Castle v. Sangamo Weston, Inc., 650 F.Supp. at 255–59.

See also infra n. 15 for further explanation regarding the award of front pay.

pealing from both the "Judgments" and the "Order and Judgment." The district court then granted Sangamo Weston's second motion for judgment n.o.v. and entered its "Order" with supplementary memorandum to that effect on August 18. Again erring on the side of caution the appellants filed their second notice of appeal, No. 86–3979, on August 25, 1986, appealing from the district court's "Order." These appeals were consolidated by this court on November 17, 1986. This court then asked the parties to address the issue of whether this court has jurisdiction to hear appeal of this case under appeal No. 86–3543 or under appeal No. 86–3579. Other issues in the case at bar are: (1) whether there was sufficient "substantial" evidence admitted at trial on which the jury reasonably could have based its verdicts; (2) if there was substantial evidence and the judgment n.o.v. is reversed, whether the district court's conditional rulings on liquidated damages, front pay, and pension benefits were advisory opinions which should be vacated by this court; (3) if these conditional rulings were not advisory opinions, whether the district court abused its discretion in determining these equitable issues; (4) whether the appellants are entitled to an award for prejudgment interest on the back pay awards; and (5) if there was not substantial evidence, whether the appellants should be granted a new trial because the district court erroneously excluded key evidence of age discrimination which, if admitted, would have provided the jury with a sufficient basis to sustain its verdicts for the appellants.

## II. DISCUSSION

*A. Effect of Appeal No. 86–3543*

It is ironic that steps taken in the instant case in the interests of judicial economy and efficiency caused the opposite result. In the post-verdict/pre-judgment hearing, the district court and the parties agreed to the presentation of arguments on appellee's oral motion for judgment n.o.v. so that the trial judge would not have to return from Nebraska to Florida for a second hearing on that motion. *See Castle v. Sangamo Weston, Inc.,* 650 F.Supp. at 254–55. Appellee feared the motion was untimely, however, because it was made *before* entry of any judgment in the case. Rule 50(b) may be read as requiring a judgment to be entered if a verdict is rendered before the motion for judgment n.o.v. may be made. "Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict." Fed.R.Civ.P. 50(b).[6]

Appellee, therefore, filed a second motion for judgment n.o.v. This second motion was exactly the same as the first motion except that it was made within ten days *after* judgment was entered on the verdicts. Because of the unique procedural posture of this case, however, appellee's second motion also was filed after the exact same motion had been granted. *See Castle v. Sangamo Weston, Inc.,* 650 F.Supp. at 277. Furthermore, appellee's second motion cast doubt as to the effect of appellants' first notice of appeal, No. 86–3543, which was filed after the second motion for judgment n.o.v. was made. Appellants, fearing their first notice was thus premature, then felt compelled to file a second notice of appeal, No. 86–3579, after the district court granted appellee's second motion for judgment n.o.v.[7]

Appellee now contends that appellants' first notice of appeal was premature because it was filed before the entry of an order disposing of appellee's second motion

---

**6.** Prior to the 1963 amendments a motion for judgment n.o.v. was to be made within ten days after the verdict was rendered. The rule was amended in 1963 so that the time period for filing the motion was consistent with that contained in Rule 59(b) (new trial) and Rule 52(b) (time for motion to amend findings by the court). Notes of Advisory Committee on Rules, Fed.R.Civ.P. 50, 28 U.S.C.A.

**7.** We note that the interests of judicial economy might have been better served had the district court immediately dismissed appellee's second motion because it was repetitive.

for judgment n.o.v.[8] Thus, appellee claims that appellants' first appeal is a nullity and only appellants' second notice of appeal is valid. Appellee then argues that the second notice of appeal only specifically appeals[9] from the district court's "Order" of August 18, 1986. The "Order" does not refer to the document entitled "Judgments" in which the district court granted equitable relief to appellants. Appellee asserts, therefore, that the only issue before us is the correctness of the district court's entry of the "Order" granting judgment n.o.v., and appellants' objections to the district court's award of equitable relief should not be considered, as not having been properly raised.

Appellants counter by arguing that the district court previously granted the exact same motion so that the lower court's subsequent "final" ruling of August 18 was in the nature of an order entering a final judgment that validates an otherwise premature notice of appeal. *See Jetco Elec. Ind., Inc. v. Gardiner*, 473 F.2d 1228, 1231 (5th Cir.1973).[10] Alternatively, appellants argue that even if their first notice of appeal was a nullity, we have jurisdiction in appeal No. 86-3579 to consider all of the claims appellant raised including the district court's grant of equitable relief. Appellants aver that the "Order" of August 18, from which their second notice specifically appeals, refers to what the district court had done one month before including

the grants of front pay and pension benefit rulings. Thus, appellants allege there was no need in the second notice of appeal to list all the prior rulings which the lower court incorporated in its rulings of August 18.

Needless to say, we have failed to find a case which parallels the procedural maneuvers of the instant case. Regarding the timeliness of appellee's first motion for judgment n.o.v., all of the relevant case law only appertains to the terminus for filing a Rule 50(b) motion, i.e. any j.n.o.v. motion filed after the tenth day following entry of judgment is untimely. Although the motion itself is articulated as judgment notwithstanding the *verdict* and a broad reading of Rule 50(b) would certainly allow the motion to be made after a verdict is rendered but before judgment on the verdict is entered,[11] Fed.R.Civ.P. 6(b) specifically prohibits any enlargement of the time period for a Rule 50(b) motion.

Presumably, it was the ambiguity concerning the parameters of a Rule 50(b) motion which led to appellee filing its second motion for judgment n.o.v. Although this second motion was repetitive, technically it was pending when appellants filed their first notice of appeal, No. 86-3543. Appellants argue that although their first notice of appeal may have been premature, the actual, practical effect of the district court's "Order" of August 18 was more in

8. Fed.R.App.P. 4(a)(4) reads in pertinent part: If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b) ... the time for appeal for all parties shall run from the entry of the order ... granting or denying any ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have *no effect*. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing the motion as provided above.
   (emphasis added).

9. *Fed.R.App.P. 3(c) states:* "The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."
   Appellants' first notice, No. 86-3543 specifically appealed from the documents entitled "Judg-

ments" and "Order and Judgment," which were both entered on July 17, 1986.

10. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11. Rule 50(b) does not state *"within* 10 days after judgment ..."* which would give specific parameters to the time period. Rather, it states that a motion for judgment n.o.v. is to be made "[n]ot later than 10 days after judgment ..." which emphasizes the terminus for filing. Rule 50(b) also states that the party who made a motion for directed verdict "may move to have the verdict and *any* judgment entered thereon set aside" which seems to contemplate that no judgment may have been entered on the verdict when the motion for judgment n.o.v. is made.

the nature of an order entering a final judgment that validates an otherwise premature notice of appeal. There are numerous situations where appellants' analysis would be correct. *See Jetco Elec. Ind., Inc.,* 473 F.2d at 1231 (appeal from non-final order was validated when second non-final order considered together with the first non-final order effectively terminated all litigation among the parties); *Cape May Greene, Inc. v. Warren,* 698 F.2d 179 (3d Cir.1983) (premature appeal of grant of motion for summary judgment validated when remaining cross-claim on a collateral matter was dismissed); *Pireno v. New York Chiropractic Ass'n,* 650 F.2d 387 (2d Cir. 1981) (appeal from judgment entered for two of three defendants treated by appeals court as effective as of the date of judgment was entered in favor of last remaining defendant); *Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977) (appeal from non-final order which is followed by a final order "may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party."). *See generally Robinson v. Tanner,* 798 F.2d 1378 (11th Cir.1986) (summary of case law concerning premature notices of appeal).

In the case at bar, however, this analysis is inapplicable because Fed.R.App.P. Rule 4(a)(4) specifically cites a Fed.R.Civ.P. 50(b) motion as one of four instances in which a premature notice of appeal "shall have no effect." *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 60, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (notice of appeal filed before disposition of motion for a new trial is ineffective for appellate jurisdiction because under Fed.R.App.P. 4(a)(4), as amended in 1979, the premature notice of appeal "was not merely defective; it was a nullity."). *See also* 9 J. Moore, B. Ward, & J. Lucas, *Moore's Federal Practice* Par. 204.01[4] (2d ed. 1987) ("The proposed amended rule [Rule 4(a)(2)] would recognize this practice [effectuating premature notice of appeal] but make an exception in cases in which a post-trial motion has destroyed the finality of the judgment. *See* Note to Rule 4(a)(4) below."). Appel-

lants' first notice of appeal, No. 86–3543, therefore, does not confer appellate jurisdiction. Appeal No. 86–3579, filed after entry of the "Order" of August 18, is the only valid notice of appeal.

■ This does not mean, as appellee would have us believe, that we cannot review the liquidated damage and front pay awards granted by the district court in the "Judgments" of July 17. In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court confronted a strikingly similar procedural problem. In that case, judgment on a motion to dismiss was entered on December 19, 1960. Petitioner moved to vacate that judgment and amend its complaint on December 20. On January 17, 1961, petitioner filed a notice of appeal from the December 19 judgment. On January 23, the district court denied petitioner's December 20 motions. Petitioner then filed an appeal from the denial of her motions. Treating petitioner's December 20 motion to vacate as a Rule 59(e) motion, the court of appeals concluded under former Fed.R.App.P. 73(a) [12] that the January 17 notice of appeal was premature and of no effect. The court of appeals then held the second notice of appeal ineffective to review the judgment of December 19 because the second notice "failed to specify that the appeal was being taken from that judgment as well as from the orders [of January 23] denying the motions." The Supreme Court, reversing, held:

> The defect in the second notice of appeal did not mislead or prejudice the respondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismis-

---

12. The present Fed.R.App.P. 4(a) is derived from former Fed.R.App.P. 73(a). 9 J. Moore, B.

Ward, & J. Lucas, *Moore's Federal Practice* Par. 204.01[2] (2d ed. 1987).

sal and the denial of the motions was manifest. . . .

It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Id.* at 181–82, 83 S.Ct. at 229–30, *quoting Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *Accord Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

Thus, viewing the ineffective appeal No. 86–3543 and the valid appeal No. 86–3579, appellants in the case at bar clearly intended to appeal both the July 17 "Judgments" as well as the August 18 "Order." Moreover, the "Order" specifically refers to the district court's "previous Memorandum and Opinion" in which the lower court's findings and conclusions set forth in the "Judgments" are actually incorporated. We therefore hold that all rulings by the lower court, including its determinations regarding liquidated damages and front pay, are properly before this court.

### B.  Sufficiency of the Evidence

The standard for reviewing a judgment n.o.v. is the same as that used by the district court to determine whether to grant a motion for judgment n.o.v. *All* of the evidence presented at trial must be considered in "the light and with all reasonable inferences most favorable to the party opposed to the motion." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). A motion for judgment n.o.v. should be granted only where "reasonable

men could not arrive at a contrary verdict. . . ." *Id.* Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion," the motion should be denied. *Id.* Appellants argue that there was sufficient evidence presented from which the jury reasonably could have inferred that age was a "determinative factor" in their discharge. We agree.

A plaintiff may establish a prima facie case of age discrimination in at least three ways. *Buckley v. Hospital Corp. of America*, 758 F.2d 1525, 1529 (11th Cir. 1985). First, plaintiff may present direct evidence of discriminatory intent. Second, plaintiff may use a modified *McDonnell Douglas* test to prove that (1) plaintiff was a member of a protected group, (2) plaintiff was discharged, (3) plaintiff was replaced with a person outside the protected group, and (4) plaintiff was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977). Third, plaintiff may present statistical proof of a pattern of discrimination.

■ The district court mistakenly concluded that during trial appellants proceeded under the disparate treatment theory, attempting to establish a prima facie case using statistical proof of a pattern of discrimination. Appellants did not proceed under this theory, but instead attempted to present direct and circumstantial evidence of age bias. We find appellants' evidence was circumstantial.[13] Therefore, to establish a prima facie case, appellants needed to meet the four-prong *McDonnell Douglas* test.

The *McDonnell Douglas* test cannot be mechanically applied in an age discrimina-

---

**13.** Had appellants' evidence been "direct," that is "[e]vidence, which if believed, proves existence of fact in issue *without inference or presumption*," Black's Law Dictionary 413 (5th ed. 1979) (citations omitted) (emphasis added), appellee would have had a higher burden of rebutting appellants' prima facie case. *See, e.g., Bell v. Birmingham Linen Serv.*, 715 F.2d 1552,

1557–58 (11th Cir.1983). An example of direct evidence would be a scrap of paper saying, "Fire Rollins—she is too old." *See Williams v. General Motors Corp.*, 656 F.2d 120, 130 (5th Cir. Unit B 1981) (Unit B decisions are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982)).

tion case,[14] however, because the discrimination tends to be more subtle than race or sex discrimination, yet no less injurious to the worker who has been dismissed. *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980). For example, in *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1390 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983), we noted the Ninth Circuit's conclusion in *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981) that the third prong of the *McDonnell Douglas* test could be established by showing that a plaintiff "was replaced by a *substantially* younger employee with equal or inferior qualifications" (emphasis in original). Also, where the plaintiff's dismissal was part of a reduction in force, obviously replacement is not an issue. *See McCuen v. Home Insurance Co.,* 633 F.2d 1150, 1151 (5th Cir. Unit B 1981), *McCorstin,* 621 F.2d at 754.

■ Another variation of age discrimination is a claim of constructive discharge which appellant Moore alleged at trial. A plaintiff can prove constructive discharge by showing that his employer created conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980), *quoting Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977). Whether a prima facie case of discrimination has been established is essentially a factual question. *Goldstein v. Manhattan Ind., Inc.,* 758 F.2d 1435, 1443 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). If an ordinary person could reasonably infer discrimination from the facts shown, if those facts remained unrebutted, a plaintiff has established a prima facie case. *Id.* The burden then shifts to the defendant to produce evidence that the plaintiff was "discharged for a legitimate, nondiscriminatory reason." *Archambault v. United Computing Sys., Inc.,* 786 F.2d 1507, 1512 (11th Cir.1986). *See Goldstein,* 758 F.2d at

1444. To rebut the plaintiff's evidence the defendant must present evidence which "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Archambault,* 786 F.2d at 1512, *quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (Supreme Court clarified shifting nature of burdens of persuasion when *McDonnell Douglas* test applied). If the defendant satisfies its burden, "the plaintiff then carries the burden of persuasion that the reasons offered for his discharge were merely a pretext for age discrimination." *Archambault,* 786 F.2d at 1512.

■ In the case at bar the conflicting testimony of appellants and Sangamo Weston officials raised a genuine issue of a material fact as to why the appellants were discharged. Appellants presented sufficient evidence to establish their prima facie case. Appellee presented contrary evidence intended to prove appellants were dismissed for various nondiscriminatory reasons, i.e., personality conflicts, business reorganization, unsatisfactory job performance. The jury found Sangamo Weston's explanations unworthy of credence. Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact. *Reynolds v. CLP Corp.,* 812 F.2d 671, 674–75 (11th Cir.1987). Neither the district courts nor the appellate courts are free to reweigh the evidence and substitute their judgment for that of the jury. *Michigan Abrasive Co. v. Poole,* 805 F.2d 1001, 1005 (11th Cir.1986).

■ After reviewing the voluminous record in the light most favorable to appellants, we conclude that appellants presented substantial evidence of such quality and weight that fair-minded jurors, exercising impartial judgment, could reasonably have concluded. that Sangamo Weston's articulated nondiscriminatory reasons for discharging or demoting appellants was merely a pretext for age discrimination. Ac-

---

**14.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) involved a Title VII claim. Title VII, 42 U.S.C. Sec. 2000e–1 to 2000e–17 (1982) prohibits discrimination on the basis of race, religion, sex, and national origin. As noted, *supra,* the case at bar arose under the ADEA, 29 U.S.C. Secs. 621–34 (1982 & Supp. III 1985).

cordingly, we reverse the district court's grant of judgment n.o.v. and reinstate the jury verdict of willful violation of the ADEA and back pay damages as to each of the ten appellants.

### C. Post–Verdict Rulings

■ Having overruled the district court's grant of judgment n.o.v. for appellee, we must now turn to its other determinations. The lower court specified that "[i]f the jury verdict is allowed to stand," it would grant liquidated damages for appellants and deny them reinstatement and front pay.[15] *See Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 255, 257, 258. Appellee would have us affirm the district court's awards of equitable relief should we reinstate the jury verdict because those awards were entered in the "Judgments" prior to the entry of the judgment n.o.v. in the "Order and Judgment," and, appellee contends, the district court did not abuse its discretion in awarding such relief.

We decline to follow appellee's reasoning. Once a judgment n.o.v. is entered the prior judgment entered on the verdict may be considered vacated, *see* 46 Am.Jur.2d *Judgments* Sec. 111 (1969), especially in cases such as the one at bar where the procedure of the case and substance of the decision cast great shadows of doubt as to the validity of the judgment entered on the verdict.

Although the district court technically granted judgment for appellants before it ruled on appellee's motion for judgment n.o.v., it is quite obvious the lower court already had decided to grant appellee's motion when it awarded liquidated damages and equitable relief to the appellants.

The above findings and judgments have been entered without ruling on the defendant's motion for directed verdict or alternative motion for judgment not-

withstanding the verdict, to which the Court now turns its attention. . . .

The Court has concluded that since judgments will be entered in favor of the plaintiffs, outlining how the Court would rule in the event the jury's verdicts and findings are upheld, it will address and rule upon the defendant's motion for judgment notwithstanding the verdict. In the interest of judicial economy this procedure has been taken to put this case in a posture so that if this Court's ruling on the defendant's motion for judgment notwithstanding the verdict is overturned, and barring any major error during the trial which would necessitate a retrial, the case may be finalized without the need for a remand to this Court for findings as to front pay, liquidated damages, and final entries of judgment for each plaintiff.

*Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 261–62. Once the decision was made to grant appellee's motion determination of liquidated damages and equitable relief became an academic exercise. Appellate courts in at least three cases have concluded that where a jury determined a liability issue in favor of the defendant, jury findings on damages for the plaintiff were created in a "purely academic atmosphere." *See Williams v. Slade*, 431 F.2d 605, 609 (5th Cir.1970). "The determination of damages therefore bore the characteristic of an advisory opinion . . . for it was purely academic when it was made and did not pass through the refining pressure of reality." *O'Neill v. United States*, 411 F.2d 139, 146 (3d Cir.1969). *See Romer v. Baldwin*, 317 F.2d 919, 923 (3d Cir.1963). *Cf. Hutton v. Fisher*, 359 F.2d 913, 920 (3d Cir.1966). In the case at bar, although the court rather than the jury made the damages determinations, we conclude that these determinations were no less "advisory" than the jury determinations in the above-mentioned cases.

---

**15.** Although the court did grant specific amounts of front pay to appellants Fearn, Gregory, and Ridgewell, *Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 258, the court immediately thereafter concluded that "plaintiffs Bass, Castle, *Fearn, Gregory,* Norton, *Papastrat,* and *Ridgewell,* would be made whole by the dam-

ages previously awarded to them, and should recover nothing from the defendant for front pay damages." *Id.* (emphasis added). It is impossible to reconcile these two determinations; this is but one more ambiguity in the case at bar.

We admirably note that the district court's procedural maneuvers in this case were all designed to promote judicial economy. Unfortunately, these conditional rulings are an impermissible means to a noble end. The only conditional ruling allowed by Fed.R.Civ.P. 50 is a conditional ruling for a new trial should the trial court's grant of a motion for judgment n.o.v. be overruled. *See* Fed.R.Civ.P. 50; 9 C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 2540 (1971). We regret the necessity of prolonging these proceedings, but in the interest of justice we must remand the case back to the district court for determination on the issues of liquidated damages and equitable relief for appellants. To guide the district court, we now summarize the prevailing case law on these issues.

### 1. Liquidated Damages

█ Section 7(b) of the ADEA, 29 U.S.C. Sec. 626(b), provides for liquidated damages where a finding of willful violation is made. The jury specifically found Sangamo Weston's conduct in discharging each of the ten appellants to be "willful." Sangamo Weston thus "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *TransWorld Airlines v. Thurston,* 469 U.S. 111, 128–29, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985). This circuit has squarely adopted the *Thurston* standard. *See Spanier v. Morrison's Management Services, Inc.,* 822 F.2d 975, 978 (11th Cir.1987); *Reynolds v. CLP Corp.,* 812 F.2d at 675; *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1100 (11th Cir.1987) ("*Lindsey II*") (rejecting a Third Circuit case requiring "outrageous" conduct).

On remand the district court should award each appellant liquidated damages at least equal to the amount of back pay awarded by the jury. The district court no longer has discretion to reduce the amount of liquidated damages. *Spanier,* 822 F.2d at 979. The Supreme Court, in *Thurston,* disapproved of this circuit's former, broad definition of "willful," *Thurston,* 469 U.S. at 127–28, 105 S.Ct. at 625, *see Hendrick v.*

*Hercules,* 658 F.2d 1088, 1096 (5th Cir. Unit B 1981); *Hays v. Republic Steel Corp.,* 531 F.2d 1307, 1311–12 (5th Cir.1976), thus disapproving by implication the discretion this court had vested in the district courts to reduce the liquidated damages award if the employer in "good faith, reasonably believed it was not in violation of the ADEA." *Spanier,* 822 F.2d at 979. When a jury finds willfulness, as defined by *Thurston,* it has already factored the possibility of good faith into its examination. *Powell v. Rockwell Inter. Corp.,* 788 F.2d 279, 287 (5th Cir.1986). Not only would a district court impermissively be making a finding contrary to the jury's findings, *see Lindsay II,* 810 F.2d at 1097–98, but under the *Thurston* definition to find "good faith" after a finding of "willful" violation is illogical; the two terms are now mutually exclusive.

### 2. Equitable Relief

Once a verdict has been rendered in favor of an ADEA plaintiff, Sec. 7(b), 29 U.S.C. Sec. 626(b), authorizes the district court to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act], including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [owing a person as a result of the violation of the ADEA]." This is a broad grant of remedial authority. *Whittlesey v. Union Carbide Corp.,* 742 F.2d, 724, 727 (2d Cir.1984). The selection of remedies is a matter of the trial court's discretion, so long as the relief granted is consistent with the purposes of the ADEA. *Goldstein* 758 F.2d at 1448. The purpose of the ADEA, insofar as the individual plaintiff is concerned, is to make the plaintiff "whole," to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer. *See Koyen v. Consolidated Edison Co. of New York, Inc.,* 560 F.Supp. 1161, 1168 (S.D.N.Y. 1983).

The district court, considering equitable relief for appellants, determined that "reinstatement for all of the [appellants] would

be inappropriate" and that appellants "would be made whole by the damages previously awarded to them and should recover nothing from the defendant for front pay damages." [16] *Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 257, 258. Appellee argues these findings were correct and that no other equitable relief is necessary. Appellee contends that appellants rejected reinstatement and are therefore precluded from seeking money damages in lieu of reinstatement, and, if appellants are not precluded from seeking money damages, they were made whole by the damages previously awarded.

We disagree. Appellants did not abandon their demand for reinstatement; they merely presented to the lower court reasons why reinstatement might be considered inappropriate. A court must be informed on all aspects of an issue if it is to make a reasonable decision. The district court correctly determined that reinstatement was not a viable form of relief due to the surrounding circumstances in the case at bar.

The district court then concluded that its awards of liquidated damages as well as the back pay awards provided sufficient relief to appellants, and, therefore, the court refused to grant any additional monetary damages such as front pay to appellants. The district court mistakenly relied on guidelines set out in a First Circuit opinion which determined that liquidated damages could be considered when deciding whether to grant further relief. *See Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 258.

A district court may not factor in the liquidated damages award when considering equitable relief because liquidated damages are punitive in nature. *Thurston*, 469 U.S. at 125, 105 S.Ct. at 624. Punitive damages are imposed on a defendant to punish him or to set an example for others; they are awarded to plaintiffs *in addition to* compensatory or actual damages. *See* Black's Law Dictionary 352 (5th ed. 1979). Liquidated damages are not meant to re-

place equitable relief under the ADEA. *See Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 280 (8th Cir.1983).

The district court also implied that front pay damages, being prospective, were much too speculative to be calculated. *Castle v. Sangamo Weston, Inc.*, 650 F.Supp. at 257–61. Admittedly, awarding prospective relief involves some risk of uncertainty, but that in itself does not preclude an award of such relief. "District courts have had considerable experience with damages for future wages in employment contract and personal injury cases, ... as well as front pay cases under Title VII." *Whittlesey*, 742 F.2d at 728 (citations omitted). The duty to mitigate damages by seeking employment elsewhere will, of course, limit the amount of front pay available. *See id.*

Appellants, on appeal, request an award of prejudgment interest on their back pay awards. Appellee correctly points out that at trial appellants asked for prejudgment interest only if their demands for liquidated damages were denied. Appellants made these demands in accordance with controlling precedent in this circuit. *See O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1552 (11th Cir.1984). The law in this circuit on this particular issue, however, has since been changed. *See Lindsey II*, 810 F.2d at 1102. This court, in *Lindsey II*, concluded that in light of the *Thurston* decision "the portion of *O'Donnell* that bars recovery of both liquidated damages and prejudgment interest under the ADEA is no longer the law." *Id.* Appellants' trial demands, made in accordance with the law at the time of trial, do not preclude them from any benefit of this change. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711–15, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974); *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) ("[I]f, subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed."); *Memorial Hospital v. Heckler*, 706 F.2d 1130, 1136 (11th Cir.1983), *cert. denied*, 465

---

**16.** *See supra* n. 15.

U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). An ADEA plaintiff may now recover prejudgment interest in addition to liquidated damages.

We must emphasize that we merely set forth the prevailing law on each of these issues. The decision whether to grant equitable relief, and, if granted, what form it shall take, lies in the discretion of the district court. *Goldstein,* 758 F.2d at 1448. Although the district court's discretion is broad, *see Robinson v. City of Fairfield,* 750 F.2d 1507, 1512 (11th Cir.1985), it must be "guided by sound legal principles." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). Should the district court again refuse to grant equitable relief to appellants,[17] however, it must carefully articulate its rationale. *See Dickerson,* 703 F.2d at 280.

### III. CONCLUSION

We reverse the district court's grant of the judgment notwithstanding the verdict. We reinstate the jury verdicts of willful violation of the ADEA and the jury's awards of back pay. We remand this case back to the district court to award liquidated damages at least equal to the amount of back pay awarded to each of the appellants, and to reconsider appellants' demands for further equitable relief.