**Kirk F. MARTIN, Plaintiff,**

v.

**RYDER DISTRIBUTION RESOURCES, INC., Ryder Truck Rental Inc. and Ryder System, Inc., Defendants.**

No. 88–2264–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 18, 1992.

David P. Dittmar, Coconut Grove, FL, for plaintiff.

Michael S. Olin, Podhurst Orseck Josefsberg Eaton Meadow Olin & Perwin, P.A., Miami, FL, for defendants.

## MEMORANDUM ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment. After considering the Motion, responses, the argument of counsel and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following order.

### Background

Ryder System, Inc. is a holding company located in Miami, Florida with a number of operating subsidiaries providing highway transportation services, aviation services and insurance management services. Ryder Truck Rental, Inc., ("RTR"), is a subsidiary of Ryder System and the largest of a group of companies which make up the Vehicle Leasing and Services Division of Ryder System ("VLSD"). RTR provides full service leasing and short-term rental of trucks, tractors and trailers throughout the United States. Ryder Distribution Resources, Inc., ("RDR"), is a subsidiary of RTR and one of the VLSD companies. RDR provides contract carriage throughout the country.

Plaintiff, Kirk Martin, was hired by RTR on September 19, 1962. From 1982 until June, 1985, Martin was a vice-president of RTR, responsible for the Birmingham, Alabama region, one of eighteen regions at RTR. In 1985, RTR consolidated various regions and as a result the Birmingham region was closed. Martin transferred to RDR, where he was a Group Director. During his tenure at RDR, the chief operating officer of RDR was Paul Levering and the person to whom Martin directly reported was Willard Eaves.

On April 1, 1988, at the age of 53, Martin was terminated from his position at RDR. On December 2, 1988, Martin filed this claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., as amended, ("ADEA"). The Complaint alleges that RDR, RTR and Ryder System, (hereafter collectively referred to as "Ryder"), willfully violated the ADEA. Martin alleges that no reason was given for his termination; that he had never been reprimanded, counseled, or disciplined in any way during his employment; that his evaluations were always "satisfactory"; and that he met all of the goals and objectives set by Ryder. Martin also alleges that after his termination Levering directed Eaves to lower Martin's performance to a level below satisfactory as a pretext for Martin's termination.

The defendants filed the instant motion for summary judgment on July 26, 1990. After several discovery disputes concerning issues relevant to the summary judgment motion were resolved, a hearing was held on November 13, 1992, before the undersigned.

### Discussion

#### 1. Generally

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989). Initially, the plaintiff must establish a prima facie case of age discrimination. Once the plaintiff satisfies this initial burden, a rebuttable inference of discrimination is created and the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for dismissing the plaintiff. If the defendant succeeds in rebutting the inference of discrimination, the plaintiff must prove by a preponderance of the evidence that the articulated reason is merely a pretext for a discriminatory discharge. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1469 (11th Cir.1991); *Verbraeken*, 881 F.2d at 1045; *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).

In their motion for summary judgment, defendants contend that: (1) Martin has

failed to establish a prima facie case of age discrimination or (2) that assuming, *arguendo*, that a prima facie case is established, Martin has failed to sufficiently rebut defendants' articulated nondiscriminatory reasons for the discharge. This discussion begins with the determination of whether Martin has established a prima facie case.

### 2. The Prima Facie Case

■ Under the ADEA, a plaintiff may establish a prima facie case of age discrimination in three ways: (1) by direct evidence of discriminatory intent, (2) by meeting the *McDonnell Douglas* test,[1] or (3) through statistical evidence of a pattern and practice of discrimination. *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir.1991); *Carter*, 870 F.2d at 581.

#### a. Direct evidence.

As direct evidence, Martin offers allegations that the chief operating officer of RDR, Paul Levering, referred to a group of age-protected executives as "good old boys" and "old-fashioned." Defendants contend that these allegations are not direct evidence of age discrimination. This Court agrees.

■ Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without inference or presumption. *Carter*, 870 F.2d at 582 (quoting *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir.1988)). In this case, the alleged statements do not prove discrimination without inference. These statements only characterize the individuals and do not relate to a person's age. In this Circuit, such statements do not amount to direct evidence of discrimination.

This Court has held that not every comment concerning a person's age presents direct evidence of discrimination. [*Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988).] The *Young* Court made clear that remarks

merely referring to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination. *Id.* Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination.

*Carter*, 870 F.2d at 582. An example of direct evidence of discrimination would be a scrap of paper saying, "Fire Rollins—she is too old." *Castle*, 837 F.2d at 1558 n. 13.

Further, because the alleged statements in this case, at best, *suggest* discrimination, and leave the trier of fact to infer discrimination based on the evidence, by definition such evidence is circumstantial. *See Alphin*, 940 F.2d at 1501. Indeed, in other ADEA cases, alleged statements which were arguably more direct comments concerning the plaintiff's age have been held to not constitute direct evidence. *See, e.g. Alphin*, 940 F.2d at 1501 (statement by store manager that plaintiff "had been around too long and was too old and making too much money" was not direct evidence); *Carter*, 870 F.2d at 582 (city attorney's "little old Jewish lady" statement was not direct evidence); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 610–11 (11th Cir.1987) (personnel manager's statement, "you would have to take another physical examination and at your age, I don't believe you could pass it," was not direct evidence).

Therefore, the Court finds that in this case there is no direct evidence of discriminatory intent and Martin cannot establish a prima facie case through direct evidence.

#### b. The *McDonnell Douglas* Test.

■ The *McDonnell Douglas* test allows a plaintiff to establish a prima facie case under the ADEA with circumstantial evidence by showing:

---

**1.** In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court developed a test for a plaintiff to

establish a prima facie case of discrimination through circumstantial evidence.

(1) that he is a member of the protected group;

(2) that adverse employment action has been taken against him, e.g. discharge, demotion or failure to hire;

(3) that he was replaced by a person outside the protected group; and

(4) that he was qualified for the position for which he was rejected.

*Carter*, 870 F.2d at 582; *see also Elrod*, 939 F.2d at 1469. The record indicates that Martin can show the first, second and fourth prongs of the test: (1) he was 53 years-old, (2) he was discharged and (4) he was qualified for the job. However, because Martin was replaced by another age-protected employee,[2] the Court must scrutinize Martin's ability to satisfy the third prong of the test.

The Eleventh Circuit has warned against a mechanistic application of the *McDonnell Douglas* test in age discrimination cases and has concluded that a plaintiff's inability to show that he was replaced by someone under the age of 40 is not an absolute bar to the establishment of a prima facie case. *Carter*, 870 F.2d at 583.

> Seldom will a sixty-year-old be replaced by a person in the twenties.... [B]ecause the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the workplace into account.

*McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir.1980).[3] When all other elements of the test are satisfied, the determination of whether a prima facie case has been established is "a factual question evaluated in light of the particular circumstances of a given case." *Carter*, 870 F.2d at 583. The inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remain unrebutted. *Id.* at 583.

Martin shows that his replacement was ten years younger. Although a plaintiff may establish the third prong of the test by showing that he was replaced by a substantially younger employee, *see, e.g. Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520 (11th Cir.1990); *Castle*, 837 F.2d at 1559; *Pace v. Southern Ry. System*, 701 F.2d 1383, 1390 (11th Cir.1983), Martin's ten year differential, standing alone, is insufficient to satisfy Martin's burden with respect to the third prong. *Pace*, 701 F.2d at 1390. However, considering the circumstances of this case in the light most favorable to the plaintiff, the Court finds that Martin has established a prima facie case under the *McDonnell Douglas* test. *See Carter*, 870 F.2d at 583 (court held that a plaintiff replaced by an employee four years younger presented a prima facie case because she "did at least show that she was replaced by a younger person").

#### c. Statistical evidence.

Martin does not adduce any statistical evidence of a pattern and practice of age discrimination. Instead, he alleges that Levering's "good old boys" and "old-fashioned" comments show that Ryder had a pattern and practice of discrimination. However, as previously discussed, these comments are not direct evidence of discrimination. These comments merely refer to characteristics of individuals and are not associated with increasing age. Therefore, Martin has failed to put forth any evidence of a pattern and practice of discrimination and cannot establish a prima facie case under this alternative.

#### d. Conclusion.

This Court finds that Martin has established a prima facie case of discrimination under the *McDonnell Douglas* test. The analysis must now determine whether the defendants respond with sufficient rebuttal evidence.

---

**2.** Martin was replaced by Mike McCanta who was 43 years-old.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the United States Court of Appeals for the Eleventh Circuit adopted as precedent all former Fifth Circuit cases submitted and decided prior to October 1, 1981.

### 3. Rebuttal

■ Once a prima facie case of discrimination is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharging the plaintiff. *Carter*, 870 F.2d at 584. Ryder asserts that Martin was discharged because of poor performance. Ryder shows that Martin's performance evaluation in 1986 rated in the lowest 20% of all executives, that his rating in 1987 was in the lowest 2%,[4] that the overall performance of his Group deteriorated each year[5] and that in 1987 he failed on the company's objectives in 62% of his accounts.[6] Further, Ryder claims that Willard Eaves, Martin's direct superior, was not satisfied with his work.[7]

The Court finds that these are legitimate, nondiscriminatory reasons for Martin's discharge and, based thereon, Ryder has met its burden.[8]

### 4. Pretext

■ Once the defendant succeeds in rebutting the inference of discrimination, the plaintiff must prove *by a preponderance of the evidence* that the articulated reason is merely a pretext for a discriminatory discharge. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1469 (11th Cir.1991) (emphasis provided). Martin may show pretext by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter*, 870 F.2d at 584. Martin contends that he has

met his burden or created a material issue of fact by showing that: (1) Levering directed Eaves to lower his 1987 performance evaluation without reason, against Eaves' will and as a pretext for his firing and (2) that his performance evaluations were unfair and incorrect.

■ This Court must determine whether Martin's evidence is sufficient to survive summary judgment. "[A] prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a genuine issue of material fact, sufficient to present a jury question, is in issue." *Pace*, 701 F.2d at 1391. Summary judgment in favor of defendants is appropriate if Martin fails to adequately respond to defendants' articulated nondiscriminatory reasons for the discharge. *Pace*, 701 F.2d at 1391; *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir.1980); *see also Elrod,* 939 F.2d at 1470 (Court of Appeals reversed jury verdict for plaintiff because he failed to show any probative evidence challenging the defendant's articulated reasons); *Carter,* 870 F.2d at 585 (Court of Appeals reversed jury verdict for plaintiff because plaintiff failed to introduce sufficient evidence to cast doubt on defendant's legitimate, nondiscriminatory reasons).

Martin does not contest his 1986 evaluation, nor the deteriorating performance of his group, nor the failure to meet the objectives of a majority of his accounts.[9] Martin questions his 1987 performance rating and alleges that Levering directed Eaves to change Martin's rating to below satisfactory, against the wishes of Eaves and with-

---

**4.** Ryder shows that in 1986, 82.13% of all executives received performance ratings higher that Martin and in 1987, 97.63% of all executives received higher performance ratings. Affidavit of DeCew ¶ 8.

**5.** *See* Affidavit of Ellen Downey ¶ 4.

**6.** *See* Affidavit of Ellen Downey ¶ 3.

**7.** At deposition Eaves explained that the reasons for removing Martin from his position "were twofold. One was performance; the second reason was that he was not training and developing his subordinates." Deposition Transcript of Willard Eaves, p. 128.

**8.** Ryder also introduces evidence showing that the proportion of executives aged 40 and over increased during the years leading up to 1988. *See* Affidavit of Judson M. DeCew, Jr. at ¶ 5. Martin rebuts the probative value of such evidence through the affidavit of David W. Griffin, Ph.D. Because this evidence is not offered as a nondiscriminatory reason for discharging Martin, this evidence is irrelevant for purposes of summary judgment.

**9.** Martin does claim that the objectives were nothing more than a "wish list" for historically troubled accounts. However, as explained, *infra*, whether Ryder was unfair, unreasonable or mistaken is not an issue.

out any explanation.[10] Eaves denies that he was ever requested to reduce the performance rating of a manager [11] and Ryder asserts that Levering's conduct, assuming the allegations are true, is irrelevant since such action is consistent with Levering's belief that plaintiff was not adequately performing his job and plaintiff's belief that Levering did not like him. Ryder also contends that the ADEA does not impose liability for wrong or unfair employment decisions.

The relevant question is, assuming the allegations are true, whether Levering's action shows either: (1) that Ryder's legitimate, nondiscriminatory reasons are unworthy of credence or (2) that Ryder's was more likely persuaded by a discriminatory reason. If Martin had supported his allegation in the complaint that Levering changed his performance rating *after* he was fired, then a reasonable inference of pretext would be created. But Martin does not support his initial allegation and Scarpa's affidavit fails to indicate when the alleged conduct occurred. In opposing the motion for summary judgment, Martin contends that Levering's action, in conjunction with his "good old boys" comment, shows that "the given reason for plaintiff's termination was *'pretextual.'* " [12]

Martin's allegations are not evidence of pretext or discriminatory intent. The issue is not whether Ryder or Levering made a good decision or whether the evaluation process was fair.

Federal courts "do not sit as a super-personnel department that reexamines

an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of his behavior." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted). "[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory...." *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982).

*Elrod*, 939 F.2d at 1470. Also, for the reasons discussed, *supra*, the "good old boys" comment is also not evidence of discrimination.[13]

This Court finds that the evidence presented by Martin fails to challenge the credibility of Ryder's legitimate, nondiscriminatory reasons for the discharge.

Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, nondiscriminatory reasons for its action.

*Carter*, 870 F.2d at 585. Accordingly, Martin fails to oppose defendants' motion with sufficient evidence to support his position.[14]

---

**10.** Martin's allegations are supported by the affidavit of John Scarpa, a former Director of Human Resources at Ryder Distribution Resources. Scarpa stated that:

After Eaves' meeting with Levering, Eaves met with me and advised that Paul Levering had refused to sign the performance appraisal and instructed Eaves to change it by lowering the overall performance rating to below 3.0. Eaves met with me after his meeting with Levering and expressed his frustration with and inability to understand Levering's position.

Affidavit of John Scarpa ¶ 7.

**11.** *See* Deposition transcript of Willard Eaves, p. 126.

**12.** Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 6.

**13.** *See* Part 1.a. of this order, p. 4.

**14.** Further, although not raised by defendants, the testimony in Scarpa's affidavit is inadmissible. Rule 56(e) of the Federal Rules of Civil Procedure provides that: "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth facts as would be admissible in evidence." Scarpa's affidavit is not based on personal knowledge and contains inadmissible double hearsay in that Scarpa attests to the statements of an out-of-court declarant's characterization of another out-of-court declarant's statements. In ruling on a motion for summary judgment, this Court cannot properly

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Court stated that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513. Further, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial' ").

In light of Ryder's substantial evidence of its dissatisfaction with Martin's performance, the direct contradiction of Levering's alleged actions, and the insufficiency of the Scarpa affidavit, this Court concludes that a jury could not reasonably find by a preponderance of the evidence that Ryder's legitimate, nondiscriminatory reasons for dismissing Martin are unworthy of belief or that a discriminatory reason more likely motivated Ryder. Accordingly, defendant's motion for summary judgment should be granted.

### Conclusion

For the foregoing reasons, it is

consider hearsay evidence in affidavits. *Martin v. John W. Stone Oil Distr., Inc.*, 819 F.2d 547, 549 (5th Cir.1987); *Ocean Bio–Chem v. Turner Network Tele.*, 741 F.Supp. 1546, 1559 (S.D.Fla.

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment be, and the same is hereby, GRANTED. Accordingly, Final Judgment is entered in favor of Defendants and against Plaintiff, with each party to bear its own costs.

DONE AND ORDERED.

1990); *see, generally,* Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2nd § 2738.