**Sharad P. WAVDE, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

No. 95–6271–CIV.

United States District Court,
S.D. Florida.

April 28, 1997.

George Ware Cornell, Jr., Ft. Lauderdale, FL, for Plaintiff.

Harry N. Turk, Epstein Becker & Green, New York City, Sky E. Smith, Miami, FL, Robert T. Kofman, Stearns Weaver, Miami, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (D.E.33). THE COURT has considered the Motion, Plaintiff's Response to the Motion (D.E.46), Defendant's Reply thereto (D.E.53), and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby GRANTED for the reasons set forth below.

### I. BACKGROUND

Defendant Digital Equipment Corporation ("DEC") manufactures and sells computer hardware, software and services (Deposition of Jeffrey Brasor at 17–18 ("Brasor Dep.")). DEC sells its products to both DEC subsidiaries and to non-DEC distributors in the Latin American/Carribean market (id.). DEC hired plaintiff Sharad P. Wavde ("Wavde"), an individual of East Indian national origin and race, as a Financial Consultant in the Finance Department in June, 1988 (Affidavit of Sharad P. Wavde, ¶¶ 2, 5 ("Wavde Aff.")). A year later, Wavde received a promotion to a managerial position, adding credit and collection duties to his prior task of providing forecasts and operating results to distributors of DEC products in Latin America and the Caribbean (id., ¶ 6).

In 1992, the first of two reductions in force ("RIF's") occurred in the Finance Department (Affidavit of Jeffrey Brasor, ¶ 4 ("Brasor Aff.")).[1] After the RIF, in August, 1992, Wavde received a lateral transfer to the position of Financial Planning and Analysis ("FP & A") Manager. As FP & A Manager, plaintiff spent at least 25% of his time on a report called the ONEPLAN that was submitted to the home office's General International Area ("GIA") department on a monthly basis. Wavde's supervisor, Jeffrey Brasor ("Brasor"), testified that DEC's General Manager told management in 1992 that the workforce that serviced the Latin American/Caribbean market would need language skills in Spanish and/or Portuguese (Brasor Aff., ¶ 9). Three of the Financial Analysts (Messrs. Wavde, Bancroft and Briggs) did not speak Spanish or Portuguese in 1992. Plaintiff began taking Spanish lessons at Defendant's expense (id.; Wavde Aff., ¶¶ 15–16).[2]

In summer, 1993, DEC eliminated the GIA, replacing the ONEPLAN with a simple spreadsheet (Affidavit of Ignacio Prado, ¶ 8 ("Prado Aff.")). At the same time, the Finance Department was reorganized and divided into an accounting work group and a financial analysis work group (id.).[3] Brasor, as financial analysis work group supervisor, posted requisitions in June and July, 1993 to replace the two financial analysts who had transferred to accounting (Def.Mem., Exh. 3). The financial analyst postings listed Spanish and/or Portuguese fluency as a skill requirement (id.). Brasor testified that it was more efficient for the financial analysts to speak Spanish or Portuguese because it enabled them to provide support to the country personnel in their own language and assisted the country personnel in their jobs (Brasor Dep. at 41–42; Brasor Aff., ¶ 10). Brasor also testified that the only job Wavde was unable to perform was providing support to country personnel in their native language (Spanish or Portuguese) (Brasor Dep. at 33). Brasor hired two new financial analysts in October, 1993 before he received notice of the next RIF (Brasor Dep. at 34; see Prado Aff., ¶¶ 9–10). Wavde helped train the new analysts (Wavde Aff., ¶¶ 22–23).

---

1. Plaintiff was slated to be one of three employees let go in the 1992 RIF. The parties differ over the circumstances of Wavde's retention at that time. Since all inferences must be taken in favor of the non-moving party, the Court will assume Wavde's version of the facts concerning the 1992 RIF is accurate. Wavde asserts that he convinced his Exit Manager/Counselor that his termination was without merit such that the Exit Manager spoke to management and Wavde's termination was rescinded (Wavde Aff., ¶¶ 10–14).

2. Neither party asserts that plaintiff achieved fluency in Spanish by the time of his termination in late 1994 (see Wavde Aff., ¶ 16).

3. The accounting function, which had been handled by the home office, was transferred to Florida in June, 1993. The new Accounting Manager, Ed Hallow, received permission to hire two accountants and he hired Frank Briggs and Steve Bancroft, two Financial Analysts (Prado Aff., ¶ 9).

In late 1993, the financial analysis work group was targeted for another RIF. Brasor drew up a transition plan to run his department with two fewer people (Brasor Dep. at 25–27; Prado Aff., ¶ 10). The transition plan changed the focus of the financial analyst work group from "corporate/area" work to Latin American "country" work (Brasor Dep. at 25–27). As part of this reorganization, DEC emphasized supporting Latin American distributors in their native languages and de-emphasized business reports to the home office; these changes made Portuguese and/or Spanish language skills more important (*id.; see* Prado Aff., ¶ 11). The transition report recommended Wavde's termination due to (1) the elimination of the ONEPLAN report which constituted at least 25% of Wavde's work and (2) his lack of Spanish or Portuguese fluency (Def.Mem., Exh. 4). Ignacio Prado approved the transition plan (Prado Aff., ¶ 12).

Beginning in summer 1993, Wavde attempted unsuccessfully to find new employment within DEC. He investigated a "possible opening" in Logistics (Wavde Aff., ¶¶ 24–25). On December 14, 1993, Wavde was informed that he and his assistant would be laid off and his last day of employment was December 17, 1993 (*id.,* ¶¶ 28–29). His termination was effective January 14, 1994. Wavde asserts that he was informed that his lay-off was not performance-related (*id.,* ¶ 29). At the time of his termination in 1994, Wavde was 55 years old.

Plaintiff filed suit, alleging claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.,* as amended ("ADEA").

## II. *LEGAL STANDARDS*

### A. *Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Twiss v. Kury,* 25 F.3d 1551 (11th Cir.1994).

In assessing whether the movant has met this burden, the Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157. The party opposing a motion for summary judgment need not respond to a summary judgment motion with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Id.* at 160. If a response is required the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue of material fact." Fed.R.Civ.P. 56(e). There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252. Consideration of a motion for summary judgment does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990) (citations and emphasis omitted). Summary judgments for defendants are not rare in employment discrimination cases. *Id.* at 1081 (citations omitted).

### B. *Employment Discrimination Standards*

In an employment discrimination case, the plaintiff "must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.

1991) (citation omitted). At the summary judgment stage, the inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Jameson v. Arrow Company,* 75 F.3d 1528, 1531 (11th Cir.1996). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Earley v. Champion Intern. Corp.,* 907 F.2d at 1081. If plaintiff establishes a prima facie case, the burden shifts to defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action. If defendant meets its burden of production, the burden shifts back to plaintiff to establish that those reasons are pretextual. *Id.*

## III. ANALYSIS

### A. Age Discrimination

Under the ADEA, a plaintiff may establish a prima facie case of age discrimination in three ways: by presenting direct evidence of discriminatory intent; by meeting the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by presenting statistical proof of a pattern of discrimination. *Earley v. Champion Intern. Corp.,* 907 F.2d at 1081; *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 (11th Cir.1988). Plaintiff has presented neither direct evidence of age discrimination nor statistical data. Therefore, this Court's analysis begins with the *McDonnell Douglas* test for discrimination based on circumstantial evidence.

■ The Eleventh Circuit has modified the *McDonnell Douglas* test for RIF cases.

In a job-reduction case, a plaintiff can establish a prima facie case if he shows (1) plaintiff was a member of a protected group and was adversely affected by an employment decision; (2) plaintiff was qualified for his current position or to assume another position at the time of discharge and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley v. Champion Intern. Corp.,* 907 F.2d at 1082–83. Where a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough. *Id.* Furthermore, with a RIF, replacement is not an issue. *Castle v. Sangamo Weston, Inc.,* 837 F.2d at 1559.

■ Plaintiff has established that he was a member of a protected group and was adversely affected by an employment decision. Plaintiff has established that he was qualified for his current position. However, plaintiff has not established that he was qualified to assume another position at the time of his discharge.[4] The evidence (which plaintiff does not contest) shows that the focus of the financial analysis work group had been altered and that providing support to the countries in Spanish and Portuguese was an important task for the financial analysts.[5] It is undisputed that Wavde was unable to perform this task.[6] Wavde submitted that he was qualified for a "possible opening" in the

---

4. Plaintiff relies on the more liberal approach to proving a prima facie case in a RIF set forth in *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 60 (3d Cir.1988). Pl. Opp. Mem. at 8. However, as another court within this Circuit has noted when confronted with the same issue, *Earley* controls within the Eleventh Circuit. *Langston v. Carraway Methodist Hospitals of Ala.,* 840 F.Supp. 854, 864 n. 10 (N.D.Ala.1993).

5. The wisdom of defendant's decision to make Spanish fluency a skill requirement is not properly before this court. *See, e.g., Doan v. Seagate Technology, Inc.,* 82 F.3d 974, 977 (10th Cir. 1996) (noting that ADEA is not vehicle to review propriety of business decisions), *cert. denied,* — U.S. ——, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

6. In opposition to defendant's motion for summary judgment, Wavde submitted two unsworn

declarations. In one, Frank Briggs stated that he was not bilingual, that Wavde "was not accorded the respect that should have been accorded to him as a Finance Manager by Jeff Brasor" and that there was no need for him [Briggs] to be bilingual to perform his job as credit manager in Logistics (the department to which he transferred in July, 1994) (Briggs Decl., ¶¶ 1, 7, 10). In the second, Antonio Vasquez stated that he never needed to translate for Wavde during his employment at DEC, that Ignacio Prado showed animosity towards Wavde and that he found Eric Walzer's knowledge of Spanish "extremely limited" (Vasquez Decl., ¶¶ 6–10, 13). None of this demonstrates that Wavde was qualified to perform another job at DEC that was open in late 1993–early 1994.

Logistics Department (Wavde Aff., ¶ 24). However, there was no position until late January, 1994 and the position as posted required Spanish language fluency. *See Earley*, 907 F.2d at 1083. Plaintiff's statement that defendant did not consider him for a position in a different division where plaintiff's other language skills in Hindi, Marathi, Gurathi, Parsi and Sanskrit could be useful has no probative weight, especially where there is no indication in the record that there were any positions for which plaintiff was qualified at those offices nor was there any indication that plaintiff asked about any of those positions, if they indeed existed.

Plaintiff has submitted no evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision to terminate Wavde. One of the two financial analysts hired before the 1993 RIF was not in the protected age group (33) and the other, although within the protected age group, was younger than plaintiff (48). However, plaintiff's managerial position was eliminated. At least one-fourth of his duties (the ONEPLAN) were eliminated and the remainder were dispersed throughout the financial analysis work group. *See Langston v. Carraway Methodist Hospitals of Ala.*, 840 F.Supp. at 864–866.

█ Defendant has submitted a legitimate, nondiscriminatory reason for Wavde's termination: that the department underwent a reduction in force and a reorganization that made language skills in Spanish and Portuguese more important.

█ Plaintiff has submitted no evidence of pretext to rebut defendant's reasons. "[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significant probative' evidence on the issue to avoid summary judgment."

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (citations omitted).

Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, nondiscriminatory reasons for its actions. *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443–44 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988)) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)).

*Id.* Plaintiff's evidence of pretext is largely identical to that submitted in support of his prima facie case. Plaintiff has submitted no "significant probative" evidence to support his assertion that the language requirement was a pretext to lay him off. Plaintiff has not set forth a prima facie case of age discrimination. Indeed, the Court notes that the record is completely devoid of any indicia of age discrimination save for the fact that one of two employees hired two months before plaintiff's termination was under 40. This fact, standing alone, is insufficient to withstand a motion for summary judgment on plaintiff's claim of age discrimination.

### B. Race and National Origin Discrimination

Title VII prohibits discrimination on the basis of race, color, religion, sex or national origin in a variety of employment practices, including hiring, discharge and promotion.[7] *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994); *see Mayfield v. Patterson Pump Co.*, 101 F.3d at 1374–75 (citations omitted). A "Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Under Title VII and 42 U.S.C. § 1981,[8] a

---

**7.** 42 U.S.C. § 2000e–2(a)(1) provides:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

**8.** 42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

The phrase "make and enforce contracts" includes the termination of contracts. 42 U.S.C.

plaintiff must prove that the defendant acted with discriminatory purpose when making the challenged employment decision by either presenting direct evidence or circumstantial evidence. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984).[9] The circumstantial evidence analysis may be made as developed in *McDonnell Douglas Corp. v. Green. Id.; see Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997) (discussing at length legal framework governing discrimination cases based on circumstantial evidence).[10]

### 1. Direct Evidence

 Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact without inference or presumption." *Earley v. Champion Intern. Corp.,* 907 F.2d at 1081 (quoting *Carter v. City of Miami,* 870 F.2d at 581–82)); *Castle v. Sangamo Weston, Inc.,* 837 F.2d at 1558 n. 13. "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, [race or national origin] . . . constitute direct evidence of discrimination." *Castle v. Sangamo Weston, Inc.,* 837 F.2d at 1558 n. 13 (quoting *Carter,* 870 F.2d at 582.))

 In support of his claims of race and national origin discrimination, plaintiff points to two incidents as direct evidence. In the first, Wavde recalls Brasor saying "Why don't you understand? Is it because of your background, or is it because of your ethnic background or where you have come from?" (Wavde Dep. at p. 55; Pl. Opp. Mem., Exh. 9). In the second, memorialized in a diary entry, Wavde recounts Brasor talking about hiring people from a Spanish cultural background, saying "it is important to have it" and said further "If you look what the region had before, there was a crazy Frenchman and others in the group who are not what we need here." (Pl.Opp.Mem., Exh. 9). Neither of these statements constitute direct evidence of discrimination. *See Earley v. Champion Intern. Corp.,* 907 F.2d at 1081–82; *Young v. General Foods Corp.,* 840 F.2d at 829; *Castle v. Sangamo Weston, Inc.,* 837 F.2d at 1558 n. 13; *Martin v. Ryder Distrib. Resources,* 811 F.Supp. at 661. At most, the evidence here "*suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence; by definition then, the evidence is circumstantial." *Earley v. Champion Intern. Corp.,* 907 F.2d at 1081–82 (citing *Rollins v. TechSouth. Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987)). Accordingly, plaintiff has not produced direct evidence of discrimination based on race or national origin.

### 2. Circumstantial Evidence

Plaintiff's proof on the elements of the *McDonnell Douglas* test, discussed at length above, suffers from the same deficits noted in this Court's discussion of age discrimination. Although plaintiff has established that he was a member of a protected group (of East Indian race and national origin), that he was adversely affected by an employment decision (terminated) and that he was qualified for his current position as FP & A Manager, plaintiff has presented no evidence that he was qualified for another position with defendant.

Assuming *arguendo* that plaintiff established a prima facie case, defendant has pro-

---

§ 1981(b). Section 1981 "is concerned with racial discrimination in the making and enforcement of contracts." *Little v. United Technologies,* 103 F.3d 956, 961 (11th Cir.1997) (citations and emphasis omitted). To the extent plaintiff alleges *discrimination in employment* based on his race and national origin, the test under 42 U.S.C. § 1981 is substantially similar to that under Title VII. *Douglas v. Evans,* 916 F.Supp. 1539, 1555 (M.D.Ala.1996) ("the test for intentional discrimination in suits under § 1981 is the same as the framework used in Title VII discriminatory treatment cases"); *Grooms v. Wiregrass Elec. Co-op., Inc.,* 883 F.Supp. 643, 647 n. 3 (M.D.Ala.1995) (citing *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985)).

**9.** An employee in a Title VII RIF case establishes a prima facie case by showing that (1) plaintiff was a member of a protected group and was adversely affected by an employment decision; (2) plaintiff was qualified for his current position or to assume another position at the time of discharge and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of race or national origin in reaching the decision at issue. *Thevenin v. Baptist Health Systems of South Florida, Inc.,* 931 F.Supp. 856, 859–60 (S.D.Fla. 1996) (King, J.).

**10.** Plaintiff has presented no statistical evidence of discrimination.

duced a legitimate nondiscriminatory reason for its action: a reduction in force that eliminated plaintiff's job and a continuing refocus of plaintiff's department such that fluency in Spanish and/or Portuguese became more important.[11]

■ In reply, plaintiff asserts that the language requirement was a pretext. Plaintiff has submitted no evidence in support of this assertion. Indeed, although the declarations submitted in opposition to defendant's motion state that there was some "animosity" and that Wavde was "not treated with the respect he merited as a manager," there is no indication whatsoever that the alleged animosity or lack of respect was motivated by racial animus.

"Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." *Young v. General Foods Corp.*, 840 F.2d 825, 831 (11th Cir.1988) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)) (additional citations omitted), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The Court finds that this is such a case. It is, therefore,

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment in favor of Defendant DEC and against Plaintiff Wavde is GRANTED. This Case is CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

---

**11.** Defendant submitted deposition testimony that established that Spanish-speaking financial analysts increased efficiencies within the department and were able to provide support to the countries in their own language (Brasor Dep. at 41–42). Indeed, the Court notes that plaintiff's evidence corroborates that knowledge of Spanish was increasingly important in the Business division. As early as 1992, plaintiff began studying Spanish at defendant's expense (Wavde Aff., ¶¶ 15–16).