**Maria DALMAU, Plaintiff,**

v.

**VIÇÃO AÉREA RIO–GRANDENSE, S.A., a/k/a Varig, a Brazilian Company, Defendant.**

**No. 03–22440–CIV.**

United States District Court, S.D. Florida.

Aug. 11, 2004.

Thomas Harold Buscaglia, T.H. Buscaglia & Associates, Miami, FL, for plaintiff.

Paul A. Louis, Sinclair, Louis, Heath, Nussbaum & Zavertnik, Miami, FL, George Diamantopoulos, Nicholas P. Granath, Stanley J. Silverstone, Seham, Seham, Meltz & Petersen, Scott Petersen,

Sinclair, Louis, Heath, Nussbaum & Zavertnik, White Plains, NY, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HUCK, District Judge.

THIS MATTER is before the Court on the Defendant's Motion for Summary Judgment, filed July 2, 2004. The Court has reviewed the parties' respective memoranda and the evidentiary submissions and is otherwise duly advised. Upon consideration, the Court finds as follows.

### Factual Background and Procedural History

Maria Dalmau filed this lawsuit on September 16, 2003, alleging national origin and age discrimination under 42 U.S.C. § 2000e, 29 U.S.C. § 621, 42 U.S.C. § 1981, and the Florida Civil Rights Act for failure to promote her to the position of Cargo Sales Representative. Defendant Vição Aérea Rio–Grandense, S.A. ("Varig"), is a Brazilian corporation which does business in the United States as a foreign air carrier and which has an office in Miami. Dalmau is a 56–year–old woman of Cuban national origin who has worked for Varig since March 28, 1972, working in the accounting department from 1972 until 1987, in a secretarial position in the Miami cargo sales department from 1987 to 1993, and as an administrative assistant in that same department since 1993.

In 1996, Dalmau applied for a position as a cargo sales representative, but the position was given to Anne Lori Escobar, a Brazilian cargo sales secretary in Varig's New York office. When Dalmau asked why she did not get the job, Miriam Ponce, a Cuban who was the regional cargo sales manager at the time, told Dalmau that Escobar had better qualifications for the position. In 2000, Dalmau enrolled at Florida International University, where

she received a Bachelors in Business Administration in 2003. In December 2001, Ponce retired, and Varig attempted to fill her position. Dalmau applied for the opening and was interviewed by Jack Servera, Director of Cargo Sales for North America and Asia. Servera felt another applicant, Douglas Scott, a 44–year–old Brazilian-born cargo sales representative in Miami, was better qualified for the position, and Servera offered the regional cargo sales manager position to him. Servera noted that "when I spoke to [Dalmau] at the time for this position I did not feel that she had any of the ingredients that I was looking for in sales."

On February 19, 2002, Varig internally advertised a cargo sales representative opening that resulted from Scott's promotion. As the new regional cargo sales manager, Scott was responsible for hiring for that position. The position was also advertised in the Miami Herald for at least two days, opening the position to applicants from outside the company. Maria Vill–Lloch, Varig's head of human resources, had originally prepared the job posting based on a prior announcement and forwarded it to Scott for his review. Scott told Vill–Lloch that he thought it was necessary for the applicant to be fluent in Portuguese, the official language of Brazil, so he added a requirement of fluency in both spoken and written Portuguese. Scott has stated he felt it was a definite asset for the sales representatives in Miami to be fully bilingual due to the constant communication with the head office in Brazil and because a large number of the Miami office's customers are Brazilians who conduct business in Portuguese. Scott concedes that Portuguese is not strictly required for the position, but he believed it to be necessary in order to "maintain a straighter relationship," or better aligned relationship, with the customers. Of the fifty regular companies that the Miami branch does business with,

fifteen are Brazilian customers, although Scott admits most of those companies do have at least some personnel who are bilingual in either English or Spanish. Dalmau admits that some of the written communications of the Miami cargo sales office are in Portuguese. Although Servera agrees that fluency in spoken Portuguese is important to the job, he stated he did not believe Portuguese literacy is required because the aviation world deals in English.

On February 22, 2002, Dalmau applied for the position by sending a letter and copy of her resume to Scott. Scott informed her that he did not believe her motivation for applying for the position, which he felt was a financial one, was the right motivation and further advised her that her "talents lied [sic] in other activities." In her position as administrative assistant, she did not have much interaction with customers, and she had no prior experience in sales. Her resume indicates fluency in English and Spanish, but notes only "conversational Portuguese (read and comprehend)." However, although Dalmau admits that she is not "proficient" in Portuguese and that she uses a dictionary to write it, she feels her language skills were sufficient to satisfy the requirement of fluency in written and verbal English and Portuguese. Scott was aware that Dalmau could read and write and could speak and understand Portuguese to some extent, but did not believe that she fully satisfied the language fluency requirement for the position. Moreover, Scott, having worked with Dalmau from 1989 to 1991 and again from 1995 to 2001, "knew that she had a contentious and abrasive personality that was not at all suited to a sales position" and stated that "her inadequate interpersonal skills were often exhibited when she answered telephone calls from clients and prospective clients." Scott related one instance where a customer had reported to him that she refused to talk to

anyone at Varig other than Scott in the future because she had been frustrated with the treatment she received from Dalmau. Scott avers that neither Dalmau's age nor her national origin was a factor in the decision not to promote her to a cargo sales representative position, stating that Portuguese language skills which provide the ability to communicate with customers, not nationality, was a job requirement. Servera also testified that Varig does not give preferential treatment to Brazilians in hiring decisions. Scott further states that Dalmau's lack of interpersonal skills, more than her lack of fluency in Portuguese, was the determining factor in not offering her the job. After Scott explained to Dalmau that he did not think she was the right person for the sales job, he suggested she would be well-suited for a position as cargo pricing manager for North America due to her accounting background and suggested that she prepare a proposal for creation of such a position. Dalmau never prepared such a proposal.

Scott also received an outside application for the cargo sales representative position from Madelon Cassol, a Brazilian who was employed as a customer service representative by Diamond Airfreight, a third-party cargo handling company that subcontracts its services to Varig and that has an office in the same building as Varig's cargo sales and operations department. Scott was familiar with Cassol because of the relationship Varig had with Diamond Airfreight and because of the proximity of their offices. Cassol's resume reflected that he was fluent in English, Spanish, and Portuguese. Scott felt Cassol had qualifications that made him the best candidate for the position, including an outgoing personality, an ability to get along well with Varig sales and operation staff in Miami and Brazil, and a good knowledge of Varig's product due to his job at Diamond Airfreight. Scott felt Cassol was an excellent fit for the cargo sales

representative position and recommended to Servera that Cassol be offered the position. Although Servera approved the recommendation, he stated that the decision was delegated solely to Scott as the regional cargo sales manager, and Servera had neither reviewed the backgrounds of the candidates nor approved the job announcement. Cassol began his employment on June 3, 2002, at the age of twenty-five. Robert Kern, another cargo sales representative who was hired at that time and who started on the same day, was fifty-years-old. Scott admits that he may have once commented that he and Dalmau were ten years apart in age and admits to stating that he described Cassol as "the future of Varig." Dalmau asserts that Scott also told her she "still had another good ten years to work" and that "it's about time ... for Varig to start hiring Brazilians."

Varig has provided statistics regarding its sales force over the last three years. In 2002, Varig's sales force in the United States was made up of 38 employees, 13 of whom, or 34.21%, were of Brazilian national origin, with the remaining 25 employees representing 12 different countries. In 2003, Varig employed 32 sales employees, 10 of whom, or 31.25%, were Brazilian, while the remaining 22 were from 12 countries. In 2004, of 31 sales employees, 12, or 38.7%, were Brazilian, and the remaining 19 were from 10 countries. Over the last three years, the average age of the sales force has been 46.3 in 2002, 47.1 in 2003, and 47.5 in 2004, and over 80% of the sales force has been forty years old or older in each of those years (31 employees, or 81.6%, in 2002, 27 employees, or 84.375%, in 2003, and 27 employees, or 87.1%, in 2004).

Dalmau has provided an affidavit from Marcelo Novoa, an assistant cargo manager at Varig, who states that Varig has

shown a preference for hiring Brazilians and "[l]ately, Varig has applied a double standard by holding Brazilian job applicants to a much lower standard than other applicants for the same position." Dalmau also filed an affidavit from Georgina Silva, a Peruvian Diamond Airfreight employee, who says that while she was working at Diamond Airfreight, jobs became available at Varig that she was not informed about, even though some of her Brazilian co-workers were. When Silva asked the Varig cargo manager, Paulo Cordeiro, about this situation, he allegedly told her that those jobs were for Brazilians because "we need more Brazilians." Both Novoa and Silva stated in their affidavits that, based on their contact with Dalmau and Cassol, they believed that Dalmau was more qualified for the cargo sales representative position.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen*, 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The nonmoving party bears the burden of coming forward with evidence of each essential element of the relevant claims, such that a reasonable jury could find in his or her favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A mere "scintilla" of evidence in favor of the non-moving party, or ·evidence that is merely colorable or not significantly probative, is not enough. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). Moreover, "[a] court need not permit a case to go to the jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996) (citation omitted). Although Dalmau argues that the granting of summary judgment is questionable in employment discrimination cases, which often involve examining motive and intent, the Eleventh Circuit has made clear "that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir.2000) (en banc). In fact, as the Eleventh Circuit has noted, "[s]ummary judgments for defendants are not rare in employment discrimination cases." *Earley*, 907 F.2d at 1081.

## Analysis

A plaintiff can establish a *prima facie* case of intentional discrimination in one of three ways: (1) through direct evidence of discrimination; (2) through circumstantial evidence of discrimination by meeting the elements of the *McDonnell Douglas* test set out by the United States Supreme Court; or (3) through proof of a statistical pattern of discrimination. *See Earley,* 907 F.2d at 1081.[1] Dalmau appears to concede that the statistical evidence provided by Varig cannot, in itself, establish a *prima facie* case, but claims there is sufficient direct and circumstantial evidence to establish a *prima facie* case. Alternatively, Dalmau argues that the inclusion of the Portuguese language requirement for a sales representative position had a disparate impact by limiting hiring for those positions to individuals of Brazilian national origin. The Court will consider each of these arguments in turn.

## I. Direct Evidence of National Origin Discrimination

■ Direct evidence of discrimination is "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir.1999) (quoting *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir.1998)). Such evidence, "if believed, proves [the] existence of a fact without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997). The Eleventh Circuit has stated

that "[a]s our precedent illustrates, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor, constitutes direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086, 2004 WL 1459558, at *4 (11th Cir.2004) (quoting *Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir.2002)). If a "statement suggests, but does not prove a discriminatory motive, then it is circumstantial." *Id.*

■ Dalmau has not pointed to any evidence, disputed or undisputed, that would constitute direct evidence of age or national origin discrimination. Dalmau admits that "there is no direct evidence of age discrimination," but argues that there is direct evidence of national origin discrimination. Dalmau's most insistent claim is that Varig's requirement of Portuguese fluency and literacy is direct evidence of discrimination based on national origin. This conclusion is clearly erroneous, as a language requirement can only be circumstantial evidence of discrimination, since at least two inferences or presumptions must first be drawn. First, it requires an inference that the requirement was actually intended to limit the eligible applicant pool to only native-born speakers of a particular country, rather than to include all those who speak the language in other countries or who learned the language regardless of their place of birth. Second, it requires the fact finder to conclude that the language requirement has no legitimate purpose other than to weed out candidates based on national origin. This is clearly

---

1. Although Dalmau states claims under Title VII, the Florida Civil Rights Act, and 42 U.S.C. § 1981, the claims under each must be analyzed using the same legal framework. *See Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982) ("It is well established that ... a [§ 1981] claim may be analyzed using the *McDonnell Douglas* struc-

ture developed in Title VII suits."); *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) ("Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida Act was patterned after Title VII.").

not the type of evidence that can, by itself, prove an intent to discriminate.

Although Dalmau does not allege in her response to the summary judgment motion that any statements by Varig's managers or other individuals constitute direct evidence of discrimination, she nevertheless alleges in her deposition that Scott stated to her on one occasion that "it's about time ... for Varig to start hiring Brazilians." [2] The Eleventh Circuit "has marked severe limits for the kind of language to be treated as direct evidence of discrimination," *see Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998), and this stray remark is not of the kind of blatant remark that can make out a *prima facie* case on its own. Further, although Georgina Silva avers that she was told by a Varig cargo manager that she was not offered a position that was open only to Brazilians because "we need more Brazilians," and Marcelo Novoa states that Varig has "shown some preference for employing individuals of Brazilian origin," neither of those statements provide any direct evidence that Dalmau did not receive a promotion to cargo sales representative because of her national origin. Moreover, these statements were not made by decisionmakers as to Dalmau's promotion and, thus, cannot meet the requirements for direct evidence of discrimination. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir.2003); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Thus, Dalmau has failed to produce any direct evidence of age or national origin discrimination as to her failure to promote claim.

## II. Circumstantial Evidence of Age and National Origin Discrimination

Where there is no direct evidence of discrimination, a plaintiff can prove discrimination through circumstantial evidence using the burden shifting procedure first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a discriminatory failure to promote case, the *McDonnell Douglas* test requires that the plaintiff show the following: (1) that she is a member of a protected class; (2) that she was qualified for and applied for the promotion; (3) that she was rejected; and (4) that the position was filled by someone outside of the protected class. *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir.1998). However, even when a plaintiff can establish a *prima facie* case for discrimination, the burden merely shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the employer's action. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002). The burden on defendant here is slight, requiring only that "the defendant produce, not prove, a nondiscriminatory reason." *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995). If a legitimate reason is put forth, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that intentional discrimination motivated the employer or that the "legitimate" reason offered is merely a pretext for prohibited discrimination. *See Rojas*, 285 F.3d at 1342; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Courts have held that a plaintiff can survive summary judgment by showing sufficient disputed facts which could demonstrate that this legitimate reason was

---

2. Although the Court will assume, as it must for the purposes of summary judgment, that this statement was made, Scott denied making that statement, and it is noteworthy that Dalmau did not report this alleged statement in her EEOC Charge of Discrimination.

merely pretextual, that the reason offered for the employment action had no basis in fact, or that the reason given was insufficient to motivate the decision. *See Humphrey v. Sears, Roebuck, and Co.,* 192 F.Supp.2d 1371, 1375–76 (S.D.Fla.2002). However, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1090, 2004 WL 1459558, at *8 (11th Cir.2004) (citing *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000) (en bane)). Although the same evidence used to establish a *prima facie* case can be used to cast doubt on an employer's proffered motive, "the plaintiff cannot simply stand on her *prima facie* case; instead, she must convince the court that the evidence in the case *as a whole* preponderates in favor of a finding of intentional discrimination by the defendant." *Mortham,* 158 F.3d at 1185 & n. 12.

The Court finds it unlikely that Dalmau has established a *prima facie* case due to that fact that, by her own admission in her deposition and as reflected in her resume, she did not meet the requirement that she be fully fluent in both oral and written Portuguese, which was clearly identified as a qualification for the job in the internal and published postings. Moreover, she has not rebutted the evidence that she did not qualify for the position because her interpersonal skills were inadequate for a position in sales. However, the Court will nonetheless assume that she could make out a prima facie case and will treat these justifications for not promoting Dalmau as non-discriminatory explanations for Varig's actions, thus shifting the burden back to Dalmau to produce evidence that these reasons were merely pretextual.

■ Viewed in that light, the Court finds that Dalmau has not shown that Var-

ig's reasons were pretextual. To begin with, Varig has provided a reasonable explanation for its decision to include a Portuguese language requirement, and Dalmau has failed to demonstrate that the explanation offered is not honest. Scott included a Portuguese language requirement in the job posting because he felt it was an important qualification for a sales representative in the Miami office given the number of Brazilian companies that regularly did business with Varig and due to the communication that was required with other Varig personnel at the head office in Brazil. *See Wavde v. Digital Equip. Corp.,* 994 F.Supp. 1433, 1439–40 (S.D.Fla.1997) (noting that the plaintiff had offered "a legitimate non-discriminatory reason for its action: ... a continuing refocus of plaintiff's department such that fluency in Spanish and/or Portuguese became more important"). Dalmau's primary argument for pretext is that the language requirement was included merely to limit the pool of applicants so that the company could hire more Brazilians, contending that there is no business justification for the language requirement, especially with regard to the requirement of Portuguese literacy.

■ However, "Plaintiff confuses *disagreement* about the wisdom of an employer's reason with *disbelief* about the existence of that reason and its application in the circumstances." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997). As many other courts have said, this Court should not "sit as a super-personnel department" by examining the wisdom of an organization's business decisions; "[r]ather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman,* 229 F.3d at 1030. The question for this court is not whether Portuguese fluency and literacy were actually required for the posi-

tion, but rather whether Varig's stated reason for including the requirement is an honest explanation of its decision. *See Wavde,* 994 F.Supp. at 1438 n. 5 (noting that "[t]he wisdom of defendant's decision to make Spanish fluency a skill requirement is not properly before this court" and citing a case which held that an employment civil rights act "is not a vehicle to review the propriety of business decisions"). Varig has submitted unrebutted deposition and affidavit testimony from Scott stating why he believed a sales representative in the Miami office should be fluent in Portuguese, and Scott has further denied including the requirement for an improper purpose. Dalmau has not provided statements from any decisionmaking employee of Varig that would support that the language requirement was included pretextually to allow the company to discriminatorily hire Brazilians, nor has she provided any other evidence of such an intentional discriminatory intent in creating the language requirement. Although Servera indicated that he did not believe Portuguese literacy was required, he also stated that he deferred to his regional managers in such hiring decision and delegated all responsibility in that regard to them.[3] Further, Servera agreed that the company's base "in Miami or in the southern region is very, very heavy Portuguese speaking influenced and oriented" and that he believes it is preferred to find Portuguese speakers for the sales positions.

Moreover, Varig has provided other nondiscriminatory reasons for not offering Dalmau the sales job, specifically, Scott's assessment that she did not have the right personality or interpersonal skills for such a job and that Cassol was better qualified for such a position. *See Chapman,* 229 F.3d at 1033 (holding that a subjective reason, if based on 'a clear and reasonably specific factual basis,' can be as legitimate as any other reason, especially in service-oriented positions); *McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1550–51 (11th Cir.1986) (affirming judgment for the employer where the evidence showed that the plaintiff lacked the necessary interpersonal skills for the job and was seen as "inflexible, overly aggressive, and abrasive"). In fact, Scott states that "Ms. Dalmau's lack of fluency in Portuguese, while considered in making the decision, was not the determining factor in the denial of her application. Ms. Dalmau was not selected primarily because she did not have the interpersonal skills that are required for dealing with the Company's customers." Scott related one incident in which a customer refused to deal with anyone other than him at the company due to the treatment she had received from Dalmau. Servera similarly stated that he did not think Dalmau was well-suited for a sales position after he interviewed her for the sales manager position a couple of years earlier.

While Dalmau relies on Scott's alleged statement that "it's about time ... for Varig to start hiring Brazilians," the opinion of Novoa that Varig had shown some preference for Brazilians, and Silva's claim that a manager in a different department had stated "we need more Brazilians," these "stray remarks .... statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself," *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concur-

---

3. Dalmau also argues that, even if the requirement were legitimate, Servera testified that her Portuguese skills were sufficient for the cargo sales representative position. However, again, Servera deferred to his regional managers for such decisions, and Scott felt, based on having worked with Dalmau for several years and on her own representations as to her language skills, that she did not satisfy the requirement.

ring), are insufficient to create a plausible inference of national origin discrimination in light of the evidence that Varig had multiple, legitimate, non-discriminatory reasons for not offering Dalmau the sales position. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987) ("Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer."). This is especially true given that Scott offered to help Dalmau obtain a promotion to a position as cargo pricing manager that would utilize her skills and experience in accounting and presumably would not require the language and interpersonal skills needed by a sales representative.

Dalmau has provided no other evidence that these non-discriminatory reasons were pretextual, arguing only that she was more qualified for the position than Cassol because she had thirty years of experience at Varig, including seventeen in cargo sales, and because she was completing her business degree. She further questions Cassol's qualifications, arguing that his two years at Diamond Air Freight and three years as a server at Johnny Rocket's did not qualify him for the position. However, Dalmau has not provided any evidence that would create a material factual dispute as to whether Dalmau had sufficient interpersonal skills to perform the job. Dalmau's pursuit of a business degree and her prior work experience at Varig, which involved little customer interaction, do not demonstrate that she had the right skills for a *sales* job. The subjective, conclusory statements by two fellow employees, Novoa and Silva, that Dalmau was better qualified than Cassol for the sales representative position are insufficient to create a material factual dispute and provide no evidence regarding Dalmau's interperson-

al skills. Although Dalmau notes that Lori Escobar was promoted from sales secretary to sales representative and eventually to regional sales manager, that fact in no way addresses whether Dalmau had the disposition and skills necessary to follow the same track. In short, while Dalmau's managers commented on her accounting skills and suggested she would be promoted to a position that suited her particular skills, they felt she was not the best candidate for the sales manager and sales representative positions she applied for in 2000 and 2002, and thus offered those positions to other candidates. As such, the evidence that Dalmau has offered to show that the company's justification was pretextual is simply insufficient to create a jury question. *See Wilson,* 376 F.3d 1079, 1090 (11th Cir.2004) (holding that a plaintiff "cannot prove pretext by asserting baldly that she was better qualified than the person who received the position at issue" but rather "must adduce evidence that the disparity in qualifications was 'so apparent as virtually to jump off the page and slap you in the face'") (quoting *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253–54 (11th Cir.2000)).

Dalmau admits that the statistical evidence does not establish a *prima facie* case of discrimination, but she claims that the statistics nonetheless support that the non-discriminatory reasons offered by Varig are merely pretextual justifications hiding a true discriminatory motive. However, although Dalmau notes that Scott hired only Brazilians during his two year tenure as regional cargo sales manager, Scott hired only two sales employees in that time. Further, while Dalmau notes that more than 66% of Varig's sales personnel hires from 1998–2002 were of Brazilian national origin, only seven employees were hired by that department during that period. *See Ward v. Gulfstream Aerospace Corp.,* 894 F.Supp. 1573, 1580 (S.D.Ga. 1995) (holding that plaintiff's statistics "are

certainly not compelling and have little relevance because they are drawn from a sample size of only eleven individuals . . . ."). Moreover, even though five of those new hires were Brazilian, the statistics themselves cannot properly account for other legitimate factors, such as language skills, that could have given Brazilian applicants an advantage over their competition, nor do the statistics indicate how many non-Brazilians applied for those positions. *See Wilson*, 376 F.3d 1079, 1089 (noting that similar statistical evidence as to the number of female vice presidents was not probative of pretext in a disparate treatment denial of promotion claim, because it was devoid of other relevant information, including how many women had expressed interest in the vice president positions).

■ As for Dalmau's claim of age discrimination, she has provided even less evidence that Varig's non-discriminatory reasons for not promoting her to the cargo sales representative position were merely pretextual. The only evidence that she has offered of age discrimination are a few stray remarks which are legally insufficient to create a jury issue with regard to age discrimination. Although Scott admits to describing Cassol as "the future of Varig," does not deny that he may have commented on the ten-year age difference between himself and Dalmau, and may have stated that Dalmau had "another good ten years to work," these statements are relatively innocent comments from which it would not be reasonably plausible to infer that she was not given the promotion due to age discrimination. *See Carter v. City*

*of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) ("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.") (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988)). In fact, Dalmau concedes in her response to the summary judgment motion that "all of these statements could be innocuous and not evidence of age discrimination." Moreover, although Dalmau's pleadings and response only discuss the hiring of Cassol, who was 25–years–old, the other sales representative hired by Scott during the same time period and who began on the same day as Cassol, Robert Kern, was 50–years–old at that time. Finally, the statistics tend to rebut any inference of age discrimination in the Varig sales department, given that from 2002 to 2004, the average age of the sales staff has been from 46.3 to 47.5 years, and 82% to 87% of the sales employees have been over the age of forty. Accordingly, based on the foregoing, the Court finds that Dalmau has failed to provide sufficient evidence to survive summary judgment on the claim of intentional discrimination.

### III. Disparate Impact

■ Dalmau also submits a disparate impact claim, arguing that it is undisputed that the imposition of a requirement of Portuguese fluency "effectively eliminates virtually all candidates except for Brazilians, thus having a disparate impact based on National Origin."[4] Under a disparate

---

4. Varig notes in a footnote that Dalmau did not raise a disparate impact theory in her charge of discrimination. A plaintiff's judicial complaint must be "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n. 8 (11th Cir.1994)

(citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970)). Complaints brought in an appropriate court are permitted if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but new allegations of discrimination are inappropriate. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989). Nonetheless, courts

impact theory for hiring and promotion, a plaintiff must demonstrate three elements to make a *prima facie* case: *"first,* that there is a significant statistical disparity between the proportion of [non-Brazilians] in the labor pool and the proportion of [non-Brazilians] hired [or promoted]; *second,* that there is a specific, facially-neutral, employment practice which is the alleged cause of the disparity; and *finally,* ... that a causal nexus exists between the specific employment practice identified and the statistical disparity shown." *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1274 (11th Cir.2000). To satisfy the first prong, Dalmau must show a statistical disparity between the number of non-Brazilians hired and the number of non-Brazilians who actually applied for the position. *See id.* at 1275 (finding that the company's "hiring rate demonstrated no significant disparity because so few women actually applied for food server positions"). If a plaintiff can make out a *prima facie* case, then the burden shifts to the defendant to establish that the practice serves a legitimate, non-discriminatory business objective. *Id.* In such a case, the plaintiff "may still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated objective equally as well." *Id.*

■ In this case, Dalmau has wholly failed to make out a *prima facie* case and, even if she had, has failed to provide sufficient evidence to overcome Varig's legitimate business purpose. First, Dalmau has offered no evidence of a statistical disparity. Her only argument in that regard is that the overall percentage of Brazilians in the Varig sales department, which varied

from 31% to 38% from 2002 to 2004, is certainly higher than the percentage of Brazilians in the United States, and that an even higher percentage of the most recent sales personnel hires have been Brazilian. However, she has offered no statistical evidence of a disparity between the percentage of non-Brazilians who applied for those jobs and the percentage of non-Brazilians actually hired. In fact, given that Varig is a Brazilian company that has close ties to Brazil and to the Brazilian community in the United States, it is quite likely that the percentage of Brazilians who apply for positions with the company would be unusually high. Regardless, Dalmau cannot, as she has attempted to do, defend a summary judgment motion merely by pointing to the appearance of a statistical disparity. *See Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 963 ("Statistics without any analytic foundation are 'virtually meaningless.' ") (citation omitted).

Further, Dalmau has not satisfied the second element by pointing out a facially neutral employment practice because she has not established that a strict Portuguese language requirement was required for any sales openings other than for the two cargo sales representative positions that Scott filled in his brief tenure as the regional sales manager for Varig's Miami office. That is to say, although Varig has offered a legitimate, non-discriminatory reason for including the language requirement in the context of these allegations, namely that Scott, the regional sales manager for Miami at the time, felt that Portuguese language fluency was a necessity, there is no evidence that any other regional managers also required complete fluen-

should be "extremely reluctant to allow procedural technicalities to bar claims" and the " 'scope of an EEO complaint should not be strictly interpreted.' " *Sanchez,* 431 F.2d at 460–61 (citation omitted). Since Dalmau's disparate treatment argument arises from the

same set of facts, and since Varig does not strongly argue that she failed to exhaust her administrative remedies, the Court will assume her EEOC complaint contained a disparate impact claim and address the merits of that theory.

cy. Dalmau herself argues that Scott added the language requirement to the standard job announcement, suggesting that such a practice had not been used prior to 2002 and that it was not employed by other offices. In addition, there is no indication in this record as to whether Scott's successor continued to require Portuguese fluency for sales position staff. The evidence that Scott required Portuguese fluency for two job openings that were filled at the same time is not enough to demonstrate that this requirement was actually an "employment practice."

As for the third element of the *prima facie* case, Dalmau has produced no evidence causally connecting the language requirement with any hiring disparity. Although she claims it is undisputed that the language requirement effectively excludes everyone except Brazilians, that is neither undisputed nor necessarily true. Non-native speakers and Portuguese speakers from other Portuguese-speaking countries, such as Portugal and Senegal, would be able to satisfy the language requirement. Thus, if there were a statistical disparity based on national origin, Dalmau would still have to produce some evidence that the practice of requiring Portuguese fluency, rather than some other factor, was the actual cause of the disparity. Even so, as discussed above, Varig has offered a legitimate, non-discriminatory business purpose for its inclusion of the language requirement: to facilitate better communication with its Portuguese speaking customers and home office. Language requirements have been found to serve legitimate, non-discriminatory purposes in similar circumstances. *See, e.g., Prado v. L. Luria & Son, Inc.,* 975 F.Supp. 1349, 1353 n. 3 (S.D.Fla.1997) (noting that in sales and customer service positions, "[b]ilingualism as a criteria for employment may survive a challenge for discrimination as furthering a legitimate employer interest—accommodating customers who cannot speak En-

glish," even though "the policy works to eliminate American-born applicants who speak only English"); *Cota v. Tucson Police Dep't,* 783 F.Supp. 458, 474 (D.Ariz. 1992) ("Plaintiffs demonstrated that by virtue of their Spanish-speaking abilities, they perform work that non-Spanish speakers, Hispanic and non-Hispanic, cannot perform. That demonstration, together with other evidence, supports [defendant's] contention that the requirement of Spanish speaking serves, in a significant way, its legitimate business goals."). Finally, Dalmau has offered no alternative practice other than to eliminate the requirement or to merely require less proficiency in the language, and she has not demonstrated that either of these would accomplish equally well Scott's stated objective of "maintaining a straighter relationship" with Varig's customers. As such, Dalmau would be unable to prove disparate impact even if she had made out a *prima facie* case.

## Conclusion

For the reasons stated above, Dalmau has failed to point to any genuine issues of material fact that would allow a jury to conclude that Varig failed to promote her due to intentional or disparate impact discrimination on the basis of her national origin or age. Accordingly, it is

ORDERED that Defendant Varig's Motion for Summary Judgment is GRANTED. Final Summary Judgment will be entered this same day.